

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DOMINIC HARDIE,

Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al.,

Defendants.

Case No. 13cv346-GPC (DHB)

**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**

**[ECF No. 98]**

Plaintiff and Defendant National Collegiate Athletic Association (the "NCAA") filed a Joint Motion for Determination of Discovery Dispute on November 1, 2013. (ECF No. 98.) After reviewing the Joint Motion, the Court hereby GRANTS Plaintiff's request to compel, as outlined below.

## I. BACKGROUND

Plaintiff brings this action under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, et seq. Plaintiff alleges the NCAA implemented a coaching certification policy that unlawfully discriminates against African Americans in places of public accommodation in violation of Title II. Plaintiff filed his Complaint on February 13, 2013. (ECF No. 1.) On March 7, 2013, the NCAA filed a Rule 12(b)(6) Motion to Dismiss. (ECF No. 9.) On March 14, 2013, Plaintiff filed a Motion for Preliminary Injunction, seeking to enjoin the NCAA from enforcing the coaching certification policy, which prevents all persons with felony

convictions from coaching at NCAA events. (ECF No. 18.) Plaintiff also filed a Motion to Expedite Discovery. (ECF No. 19.)

On April 5, 2013, the Court granted, in part, and denied in part, Plaintiff's request for expedited discovery. (ECF No. 46.) Plaintiff was permitted to serve limited discovery on the NCAA prior to the Rule 26(f) conference.[1] Thereafter, Plaintiff served his First Set of Requests for Production of Documents, which are the subject of the instant discovery dispute.

On May 30, 2013, the NCAA's Motion to Dismiss was denied (ECF No. 66), and on June 21, 2013, Plaintiff's Motion for Preliminary Injunction was denied. (ECF No. 84.) Following the Early Neutral Evaluation Conference on July 31, 2013, the parties held the Rule 26(f) conference. On September 13, 2013, the Court issued a Scheduling Order, setting forth the pretrial deadlines, including a discovery cutoff. (ECF No. 97.)

## II. DISCUSSION

The document requests at issue sought:

- All Documents concerning or relating to the number of coaches of high school age basketball teams who were denied certification under the 2011 Certification Rules, by year, race, and ethnicity.
- All Documents that You relied upon to determine certification of coaches of high school age basketball teams between January 1, 2005 and the present.

(ECF No. 98 at 1.)

In response, the NCAA produced spreadsheets that list the coaching certification applicants. However, the personally identifiable information of the applicants, including last

[1] Due to the expedited nature of the request, the Court found it was appropriate to limit the scope of the requested discovery. Specifically, the Court explained: "The Court has reviewed the proposed discovery requests, and finds the majority of the information sought is relevant to the pending motion for preliminary injunction and is likely to assist the Court in resolving the motion. However, the Court finds that some of the requests are overbroad at this stage in the litigation. Specifically, the Court finds Plaintiff's requests should be limited to information about the NCAA's policies from 2006 to present, as the two coaching-certification policies that Plaintiff was subject to fall within that time period." (ECF No. 46 at 4.) Therefore, at that early stage in the case, the Court declined to let Plaintiff serve a document request seeking the identities of all coaches of high school age basketball teams who sought certification from January 1, 2005 to the present. However, the Court's prior order did not hold that such a document request would never be permitted, or that the information was not relevant.

names and addresses were redacted. Plaintiff now moves to compel unredacted versions of the documents that were produced. Plaintiff argues the document requests call for the applicants' personally identifiable information; that production of the information is relevant to the issues at the core of this litigation; and that the privacy interests of the third party applicants should not bar production. The NCAA counters that the requested information falls outside the scope of the document requests; that the information is not relevant to Plaintiff's claim under Title II; and that Plaintiff has not shown a compelling need for the information that is strong enough to outweigh the third parties' privacy interests.

**1. Legal Standard**

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery. For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(I).

/ / /

/ / /

**2. Scope of the Document Requests**

As to the scope of the requests, the NCAA makes a valid point that neither of Plaintiff's document requests specifically ask for the personally identifiable information of the coaching certification applicants. However, the time for discovery is still open. (*See* ECF No. 97 (discovery cutoff is May 2, 2014).) Thus, even assuming the information is outside the scope of the request, Plaintiff could propound another document request curing the deficiency. Therefore, in the interest of judicial efficiency, the Court finds it is appropriate to address the merits of the parties' discovery dispute.

**3. Relevance**

Plaintiff contends the applicants' personally identifiable information is relevant to show that the coaching certification policy has a disparate impact on African-Americans. Plaintiff states he intends to use the information to construct a statistical model to measure the disparate impact. Defendant counters that the information is not relevant because: Title II does not apply since the NCAA is not a place of public accommodation; and even if Title II applies, Plaintiff can't rely on disparate impact to prove his claim. Defendant also asserts that the information will not lead to the discovery of admissible evidence because Plaintiff's proposed statistical analysis model may not be reliable. The Court finds the information Plaintiff seeks is relevant[2] and discoverable.

First, Judge Whelan previously rejected the NCAA's argument that Title II does not apply, and refused to dismiss Plaintiff's Title II disparate impact claims. (*See* ECF No. 66 at 6-9.) So, at this point, the Court has allowed Plaintiff's Title II claims to go forward. Accordingly, Plaintiff will be permitted to pursue discovery of his claims. Second, the NCAA's argument regarding the applicability of disparate impact analysis goes to the merits

[2]The Court notes that the NCAA implicitly conceded that more precise statistical measurements would be relevant in this case when it argued that Plaintiff's reliance on national statistics were insufficient. *See* the NCAA's Sur-Reply to Plaintiff's Motion for Preliminary Injunction, ECF No. 62 at 8 ("Plaintiff improperly relies on generalized statistics and fails to utilize the 'appropriate statistical measure' that 'take[s] into account the correct population base and its racial makeup.' [] Plaintiff fails to offer any data regarding the correct population base (NCAA applicants for coaching certification) or its racial makeup.") (citation omitted).

of Plaintiff's case, and is therefore, not appropriately resolved in the context of a discovery dispute. Finally, the Court finds the NCAA's objection that any statistical model will be unreliable is based on speculation, and is premature at this time.

**4. Third Party Privacy Interests**

The NCAA argues that even if Title II applies, and disparate impact analysis can be used, the third party applicants' privacy interests in their personally identifiable information bars disclosure. Plaintiff contends the third party applicants do not have a constitutionally protected privacy interest, and even if they do, his need for the information weighs in favor of production.

Because jurisdiction in this action is based upon a federal question, California's privacy laws are not binding on this court. Fed. R. Evid. 501; *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 n.6 (9th Cir. 1987). While there is no federal analogue to California's privacy laws, federal courts do recognize a right of privacy that can be raised in response to discovery requests. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35, n. 21 (1984) (noting that "[a]lthough [Rule 26(b)(2)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule"); *Breed v. United States Dist. Ct. for N. District*, 542 F.2d 1114, 1116 (9th Cir. 1976); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992). To evaluate a privacy objection, courts must balance the party's need for the particular information against the privacy right asserted. *Breed*, 542 F.2d at 1116; *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal. 1990), overruled on other grounds by *Jaffe v. Redmond*, 518 U.S. 1 (1996).

Here, as noted above, the Court finds the applicants' personally identifiable information is relevant to this litigation. Plaintiff contends he needs the information so he can build a statistical model to prove his disparate impact claim. The NCAA admits that it does not keep race statistics on the coaching certification applicants. (ECF No. 98 at 16.) Consequently, Plaintiff's only source for obtaining this information is from the applicants themselves. The Court also finds that the third party applicants have a privacy interest in

their personally identifiable information. However, that interest is not particularly sensitive. *See e.g. Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011) (distinguishing the privacy interests at stake in names, addresses and phone numbers from "those more intimate privacy interests such as compelled disclosure of medical records and personal histories"); *Algee v. Nordstrom, Inc.*, 2012 WL 1575314, *4 (N.D. Cal. May 3, 2012) (stating that although third parties "have a legally protected interest in the privacy of their contact information and a reasonable expectation of privacy, the information sought by Plaintiff is not particularly sensitive"); *Gonzalez v. Totah Family Partnership*, 2011 WL 2135344 (S.D. Cal. May 13, 2011) (ordering disclosure of third parties' personal contact information despite finding the third parties had a reasonable expectation in the information).

On balance, the Court determines that Plaintiff's need for the applicants' personally identifiable information outweighs the applicants' privacy interests. Accordingly, Plaintiff's request to compel the NCAA to produce unredacted versions of the documents that it provided in response to Plaintiff's Request for Production Nos 10 and 11 is GRANTED.[3] Specifically, the NCAA shall provide Plaintiff with the coaching certification applicants' full names and addresses.

## III. CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS the NCAA to provide supplemental responses to Plaintiff's Requests for Production, in accordance with the terms of this order, within 30 days of the date of this order.

**IT IS SO ORDERED.**

DATED: November 20, 2013

DAVID H. BARTICK
United States Magistrate Judge

[3] If the parties determine a protective order should be in place before the unredacted documents are produced, the Court is willing to entertain a joint motion for a protective order. The parties should consult the chambers rules for more information on the Court's requirements for all protective orders. Judge Bartick's chambers rules are available on the Court's website at: www.casd.uscourts.gov.