1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

DOMINIC HARDIE,

11

Plaintiff,

12
13
14

v.

15
16
17
18

THE NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION, a
nonprofit association, et al.,

19
20

Defendants.

21
22

CASE NO. 3:13-cv-0346-GPC-DHB

**ORDER:**

**(1) GRANTING THE NCAA'S
MOTION FOR SUMMARY
JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT;**

**[ECF No. 132]**

**(2) DENYING AS MOOT THE
NCAA'S MOTIONS TO STRIKE;**

**[ECF Nos. 129, 130, 131]**

**(3) DENYING AS MOOT THE
PARTIES' JOINT MOTION TO
CONTINUE PRETRIAL
CONFERENCE**

**[ECF No. 157]**

23
24

**I. INTRODUCTION**

25

Before the Court is Defendant The National Collegiate Athletic Association's

26

(the "NCAA") Motion for Summary Judgment or, in the Alternative, Partial Summary

27

Judgment. (ECF No. 132.) Plaintiff Dominic Hardie ("Plaintiff") opposes. (ECF No.

28

142.)

The parties have fully briefed the motion. (ECF Nos. 132, 142, 146.) A hearing was held on March 5, 2015. (ECF No. 155.) Upon review of the moving papers, admissible evidence, oral argument, and applicable law, the Court finds that Title II of the Civil Rights Act of 1964 does not encompass a disparate impact theory of discrimination and therefore GRANTS Defendant's motion for summary judgment.

## II. PROCEDURAL HISTORY

On February 13, 2013, Plaintiff filed a complaint, alleging racial discrimination, against the NCAA, Alliant International University, International Girls Basketball Organization, and Town and Country Hotel, LLC. (ECF No. 1.) On May 31, 2013, the Honorable Gonzalo P. Curiel was assigned to this case. (ECF No. 67.) On December 4, 2014, Plaintiff filed a first amended complaint (the "FAC"). (ECF No. 128.)

On December 8, 2014, the NCAA filed a motion for summary judgment or, in the alternative, partial summary judgment. (ECF No. 132.) The NCAA also filed three motions to strike the expert testimony and opinions of: (1) Katherine Beckett, (2) Lester S. Rosen, and (3) Marc Bendick, Jr. (ECF Nos. 129, 130, 131.) On January 30, 2015, Plaintiff filed oppositions to all four of the NCAA's motions. (ECF Nos. 139, 140, 141, 142.) On February 13, 2015, the NCAA filed responses to all four of Plaintiff's oppositions. (ECF Nos. 146, 147, 148, 149.)

## III. FACTUAL BACKGROUND

Plaintiff is an African-American male and coach of several high-school women's basketball teams. (ECF No. 142-6, Ex. F, at 31:8–9, 63:24–64:3, 145:4–7.) On October 11, 2001, Plaintiff was convicted under Texas law of possession of a controlled substance with intent to distribute, a felony. (ECF No. 142-6, Ex. G.) In 2003, the NCAA implemented a policy barring all convicted felons from coaching NCAA-certified tournaments held for recruiting student-athletes to NCAA Division I schools. (ECF No. 37-2 ¶¶ 13, 26.) In 2006, the NCAA modified its policy to allow convicted felons with non-violent felonies older than seven years to be NCAA-certified and therefore coach at such tournaments. (*Id.* ¶ 26.) In 2010, under the 2006 policy,

Plaintiff was certified by the NCAA for the 2010 and 2011 seasons. (ECF No. 142-6, Ex. F, at 100:19–101:1, 103:11–22.) In 2011, the NCAA reverted its policy back to barring all felons from certification. (ECF No. 37-2 ¶¶ 32–33; ECF No. 37-3, Ex. C.) When Plaintiff applied for certification for the 2012 and 2013 seasons, his application was denied under the 2011 policy. (ECF No. 37-2 ¶ 38; ECF No. 37-3, Ex. D.) Based on the foregoing, Plaintiff asserts a single cause of action: violation of Title II of the Civil Rights Act of 1964 (the "CRA") ("Title II") for both intentional and disparate impact discrimination. (ECF No. 128 ¶¶ 1–2.)

### IV. LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986); FED. R. CIV. P. 56. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings

and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing FED. R. CIV. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56 (1963)). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## V. DISCUSSION

The NCAA moves for summary judgment on eight grounds: (1) Plaintiff cannot establish intentional discrimination, (2) Title II does not include a disparate impact theory of discrimination, (3) any disparate impact claims are governed by *Wards Cove*, (4) Plaintiff cannot establish a prima facie case of disparate impact on African-American girls basketball coaching applicants, (5) Plaintiff cannot establish a prima facie case of disparate impact on African-Americans, (6) Plaintiff cannot show that the NCAA's felon exclusion policy does not serve significant legitimate business objectives, (7) Plaintiff cannot show that there is a lesser discriminatory alternative, and (8) Plaintiff cannot show that the NCAA denied him access to a place of public accommodation. (ECF No. 132, at 2–3.) The Court's decision on the first two issues are sufficient to rule on the NCAA's motion and thus the Court does not reach the remaining six issues. As the NCAA's motions to strike do not pertain to the first two issues, those motions, (ECF Nos. 129, 130, 131), are DENIED as moot.

### A. Intentional Discrimination

Plaintiff states that he is "no longer pursuing his intentional discrimination claim

1 under Title II." (ECF No. 142, at 9 n.7.) Accordingly, the Court GRANTS the NCAA's

2 motion for summary judgment on Plaintiff's intentional discrimination claim.

3 **B. Disparate Impact**

4      The parties dispute whether disparate impact is available under Title II.

5 (*Compare* ECF No. 132-1, at 12–15 *with* ECF No. 142, at 11.) Both parties argue that

6 the text, legislative history, and judicial interpretation of Title II support their view of

7 the statute. Neither the Supreme Court nor the Ninth Circuit has settled this issue, and

8 there is a paucity of cases analyzing it. *See Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d

9 1179, 1184 (W.D. Wash. 2002).

10      In light of Title II's ambiguity and the lack of precedent, many courts have

11 avoided deciding the issue. *See, e.g.*, *Arguello v. Conoco, Inc.*, 207 F.3d 803, 813 (5th

12 Cir. 2000) ("assuming arguendo that disparate impact claims are cognizable under Title

13 II"); *Jefferson v. City of Fremont*, No. 12-cv-0926-EMC, 2014 WL 5794330, at *7

14 (N.D. Cal. Nov. 6, 2014) ("This Court need not reach the question of whether disparate

15 impact may be alleged under Title II."); *Robinson v. Power Pizza, Inc.*, 993 F.Supp.

16 1462, 1464–65 (M.D. Fla. 1997) (parties agreed and court applied disparate impact

17 analysis to a Title II cause of action). The decisions that have concluded that Title II

18 encompasses disparate impact claims generally lack support for that conclusion. *See,*

19 *e.g.*, *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1340–41 (2d Cir. 1974)

20 (stating, without discussion, that the Supreme Court's Title VII of the CRA ("Title

21 VII") disparate impact analysis from *Griggs v. Duke Power Co.*, 401 U.S. 424 (1972),

22 applies to Title II causes of action); *Robinson*, 993 F. Supp. at 1464–65 (applying

23 disparate impact analysis to a Title II cause of action due to parties' agreement).

24 However, a number of courts have looked to the legislative history of Title II,

25 Congress's wording of other civil rights statutes, and the statute's text and concluded

26 that disparate impact claims are not cognizable under Title II. *See, e.g., Akiyama*, 181

27 F. Supp. 2d at 1184–85; *LaRoche v. Denny's, Inc.*, 62 F. Supp. 1366, 1370 n.2 (S.D.

28 Fla. 1999); *Arguello v. Conoco, Inc.*, No. 3:97-cv-0638H, 1997 WL 446433, at *2

(N.D. Tex. July 21, 1997), *aff'd in part and rev'd in part*, 207 F.3d 803 (5th Cir. 2000).

At oral argument, the NCAA argued that the cases that had found disparate impact cognizable under Title II also required intent and thus even if disparate impact were cognizable, it would require a showing of discriminatory animus. (ECF No. 155.) While some of the above court decisions have not been entirely clear, intent is generally not required to prove a disparate impact under antidiscrimination statutes. *See Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 645–46 (1989). Under such statutes, there are two types of discrimination: disparate treatment and disparate impact, though "the distinction between [the two] becomes fuzzy at the border." *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992). Where a party adopts a facially neutral policy with discriminatory animus, that policy would be properly categorized as disparate treatment under either the overdiscrimination or "proxy" theories. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1159–60 & n.3 (9th Cir. 2013). This contrasts with the Fourteenth Amendment where disparate impact must be coupled with discriminatory animus to prove a violation of the Equal Protection Clause. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977). In any event, the aforementioned Title II decisions do not, for the most part, present persuasive analysis and thus the Court turns to the statute's text, the text of other antidiscrimination statutes, and the caselaw surrounding disparate impact analysis.

In determining whether Title II encompasses disparate impact, the Court starts with the statute's text. Title II states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). First, unlike Titles I, II, and III of the Americans with Disabilities Act of 1990 (the "ADA"), and Title VII of the CRA post-1991, Title II's text does not explicitly recognize disparate impact. For example, Title III of the ADA

specifically prohibits "utiliz[ing] standards or criteria or methods of administration . . . that have *the effect* of discriminating on the basis of disability" or "the imposition or application of eligibility criteria that *screen out or tend to screen out* an individual with a disability." 42 U.S.C.§§ 12182(b)(1)(D), (b)(2)(A)(i) (emphasis added); *see Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1159, 1169 (D. Or. 1998) (finding disparate impact claims cognizable under Title III of the ADA). Similarly, since its amendment in 1991, Title VII has included a provision entitled "[b]urden of proof in disparate impact cases" which explicitly recognizes that disparate impact is available under Title VII. 42 U.S.C. § 2000e-2(k). Second, Title II's text lacks the terms "effect"or "affect" which have been used in federal regulations applying disparate impact analysis and which the Supreme Court has noted as the textual basis for finding disparate impact cognizable under Title VII and the Age Discrimination in Employment Act (the "ADEA"). *Smith v. City of Jackson*, 544 U.S. 228, 236 n.6 (2005) (ADEA); *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 991 (1988) (Title VII); *Guardians Ass'n v. Civil Serv. Comm'n of the City of N.Y.*, 463 U.S. 582, 618 (1983) (Marshall, J., dissenting) (federal regulations). As such, the Court does not doubt that Title II, on its face, is ambiguous; terms such as "discrimination" and "on the ground of race, color, religion, or national origin" are "inherently so." *See Alexander v. Sandoval*, 532 U.S. 275, 308 n.17 (2001) (Stevens, J., dissenting); *Guardians*, 463 U.S. at 592 (White, J.).

The Supreme Court's seminal disparate impact case is *Griggs*, 401 U.S. 424. In *Griggs*, the Supreme Court found that "Congress directed the thrust of [Title VII] to the *consequences* of employment practices" and held that Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." 401 U.S. at 431–32 (emphasis in original). Though *Griggs* based its conclusion on the "objective of Congress in the enactment of Title VII," 402 U.S. at 429, the Supreme Court has since grounded *Griggs* on Title VII's text. *Watson*, 487 U.S. at 991. In *Watson*, the Supreme Court recognized 42 U.S.C. § 2000e-2(a)(2)'s

"adversely affect" language as the basis for the inclusion of disparate impact under Title VII. *Id.* A plurality of the Supreme Court has gone on distinguish Title VII's two antidiscrimination sections, § 2000e-2(a)(2) and § 2000e-2(a)(1), noting that, because the latter only prohibits "fail[ing] or refus[ing] to hire" and "discriminat[ing]"—but not "adversely affect[ing]"—disparate impact claims are cognizable under § 2000e-2(a)(2) but not under § 2000e-2(a)(1). *Smith*, 544 U.S. at 236 n.6.

The most similarly worded section of the CRA to Title II is Title VI. *See* 42 U.S.C. § 2000d. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* Title VI contains the same "on the ground of" language as Title II and both prohibit "discrimination." *Compare* 42 U.S.C. § 2000d *with* 42 U.S.C. § 2000a(a). Though Title VI's jurisprudence has been muddied at times, the Supreme Court has definitively held that Title VI does not provide a private cause of action for disparate impact discrimination. *Sandoval*, 532 U.S. at 280–81 ("Title VI itself directly reach[es] only instances of intentional discrimination.") (alteration in original) (quoting *Alexander v. Choate*, 469 U.S. 287, 293 (1985)).

However, Title II contains not only a prohibition against discrimination "on the ground of race," but also states that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation"; Title VI lacks such language. *Compare* 42 U.S.C. § 2000a(a) *with* 42 U.S.C. § 2000d. Some commentators have argued that this phrase "focuses on the individual's enjoyment of a place of public accommodation" and "indicates that [Title II's] protection is not limited to incidents of intentional discrimination." Note, *A Public Accommodations Challenge to the Use of Indian Team Names and Mascots in Professional Sports*, 112 HARV. L. REV. 904, 912 (1999); *see also Jefferson*, 2014 WL 5794330, at *6. Title II is further

distinguishable from Title VI in that the former prohibits "segregation" whereas the latter does not. *Compare* 42 U.S.C. § 2000a(a) *with* 42 U.S.C. § 2000d. However, Title II must be read as a whole and its text makes clear that, though the right it secures is broadly defined, that right is only protected from "discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Therefore, the Court must determine whether the phrase "discrimination or segregation on the ground of [a protected class]" includes disparate impact under Title II. *Id.* Moreover, the term "segregation" is similarly ambiguous to the term "discrimination" and does not contain the same implication of disparate impact as terms such as "effect" or "affect."

The most similarly worded antidiscrimination statute to Title II is Title III of the ADA which prohibits discrimination against disabled persons in places of public accommodation. *See* 42 U.S.C. § 12182. Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *Id.* § 12182(a). As discussed above, Title III of the ADA contains additional language that clearly recognizes disparate impact while Title II contains no such additional language. *See Indep. Living Res.*, 1 F. Supp. 2d at 1169.

Based on the Supreme Court's construction of the antidiscrimination statutes at issue in *Griggs*, *Watson*, and *Smith*, it would be incongruous to draw parallels between Title II and the statutes under which disparate impact is cognizable. *See, e.g.*, 42 U.S.C. § 2000e-2(a)(2); 29 U.S.C. § 623(a)(2); 42 U.S.C. § 12182. Those statutes contain language that either explicitly or implicitly recognizes disparate impact. In contrast, the operative language in Title II—"discrimination," "segregation," and "on the ground of"—is far closer to statutes that do not recognize disparate impact; indeed the Supreme Court has indicated that the term "discrimination," without more, does not include disparate impact. *See Smith*, 544 U.S. at 236 n.6; *Sandoval*, 532 U.S. at

280–81. In fact the only significant difference between Title II and statutes under which disparate impact is not cognizable, *e.g.*, 42 U.S.C. § 2000e-2(a)(1), 29 U.S.C. § 623(a)(1), 42 U.S.C. § 2000d, is that Title II prohibits "segregation" in addition to "discrimination." 42 U.S.C. § 2000a(a). However, the term "segregation" is closer to "discrimination" than to "adversely affect" and thus does not justify the recognition of disparate impact under Title II. Accordingly, the Court finds that disparate impact claims are not cognizable under Title II.

This reading of the statute is further supported by the legislative history of Title II. *See Akiyama*, 171 F. Supp. 2d at 1185. The primary purpose of Title II was to eliminate "the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public because of his race or color." S. Rep. No. 88-872 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2355, 2370; *see also* H.R. Rep. No. 88–914 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2391. As the court in *Akiyama* notes, "[i]n fact, the only mention of facially neutral policies with unintended consequences recognizes that uniform practices may adversely impact religious adherents but strongly implies that such consequences do not run afoul of Title II." 181 F. Supp. 2d at 1185 (citing S.Rep. No. 88–872 (1964), *reprinted in* 1964 U.S.C.C.A.N. at 2377). Plaintiff criticizes *Akiyama* by noting that its decision only applied to religious discrimination. (ECF No. 142, at 13.) First, *Akiyama* is a district court case and thus it is not precedential no matter its holding. Second, the court in *Akiyama* noted that "the language and legislative history of the Act suggest that intent should be required for *all* claims brought under Title II," 181 F. Supp. 2d at 1184 n.3 (emphasis added), and the Court finds that *Akiyama*'s analysis of Title II's language and legislative history is just as relevant to racial discrimination as it is to religious discrimination.

Though Plaintiff makes much of the weaknesses in prior cases finding that Title II does not encompass disparate impact, (ECF No. 142, at 12–14), Plaintiff cites the similarly flawed cases of *Olzman* and *Robinson* as supporting his position. As the

Court noted above, the court in *Olzman* did not support its finding that Title II included disparate impact and the court in *Robinson* applied disparate impact analysis to a Title II cause of action because the parties agreed that it applied. Finding that disparate impact claims are not cognizable under Title II, the Court GRANTS the NCAA's motion for summary judgment on Plaintiff's disparate impact claim.

## VI. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The NCAA's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, (ECF No. 132), is **GRANTED**;

2. The NCAA's Motions to Strike, (ECF Nos. 129, 130, 131), are **DENIED** as moot; and

3. The parties' Joint Motion to Continue Pretrial Conference, (ECF No. 157), is **DENIED** as moot as no claims are left to be tried and thus the pretrial conference is no longer on calendar.

DATED:  March 24, 2015

HON. GONZALO P. CURIEL
United States District Judge